UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| Town of Duxbury ) | |
| Brimfield Housing Authority ) | |
| Town of Charlton ) | **NOTICE OF REMOVAL** |
| Chelmsford Water District ) | |
| Cotuit Fire District Water Department ) | |
| Town of Dudley ) | |
| East Chelmsford Water District ) | Removed From: |
| Town of Edgartown ) | Superior Court of Suffolk County |
| Town of Franklin ) | Case No. 03-4623-A |
| Town of Halifax ) | |
| Town of Hanover ) | |
| Hillcrest Water District ) | Case No. _____ |
| Town of Hudson ) | |
| Leicester Water Supply District ) | Hon. _____ |
| Town of Marion ) | |
| Town of Maynard ) | |
| Town of Monson ) | |
| North Chelmsford Water District ) | 03-12399 RGS |
| Town of North Reading ) | |
| City of Peabody ) | |
| Town of Pembroke ) | |
| South Sagamore Water District ) | |
| Town of Spencer ) | MAGISTRATE JUDGE Cohen |
| Town of Tewksbury ) | |
| Town of Tyngsborough ) | |
| United Methodist Church (Wellfleet, MA) ) | |
| Town of Ware ) | |
| Town of Wayland ) | RECEIPT # 52070 |
| Town of West Brookfield ) | AMOUNT $ 150.00 |
| Westview Farm, Inc. ) | SUMMONS ISSUED NO |
| Town of Avon ) | LOCAL RULE 4.1 _____ |
| Town of Bedford ) | WAIVER FORM _____ |
| Town of Bellingham ) | MCF ISSUED _____ |
| City of Brockton ) | BY DPTY. CLK. Kim Abraid |
| Centerville-Osterville-Marstons Mills Water ) | DATE 11/26/03 |
|    Department ) | |
| Town of Danvers ) | |
| Dedham Westwood Water District ) | |
| Town of Dover ) | |
| Town of East Bridgewater ) | |
| Town of East Brookfield ) | |
| Town of Easton ) | |

| | |
|---|---|
| Town of Hanson | ) |
| Town of Holliston | ) |
| Massasoit Hills Trailer Park, Inc. | ) |
| Town of Merrimac | ) |
| City of Methuen | ) |
| Town of Millis | ) |
| Town of Natick | ) |
| Town of Norfolk | ) |
| Town of North Attleborough | ) |
| North Raynham Water District | ) |
| Town of Norton | ) |
| Town of Norwell | ) |
| Town of Reading | ) |
| Sandwich Water District | ) |
| Town of Stoughton | ) |
| Sudbury Water District | ) |
| Town of West Bridgewater | ) |
| Westport Federal Credit Union | ) |
| Town of Weymouth | ) |
| Town of Wilmington | ) |
| Town of Yarmouth | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Amerada Hess Corporation | ) |
| Atlantic Richfield Company, individually and | ) |
|    doing business as ARCO Products | ) |
|    Company (f/k/a Arco Petroleum Co.), and | ) |
|    also known as ARCO | ) |
| BP America, Inc. (a/k/a BP) | ) |
| BP Amoco Chemical Company, individually and | ) |
|    formerly known as Amoco Chemical | ) |
|    Company | ) |
| BP Company North America Inc. | ) |
| BP Corporation America Inc., individually and | ) |
|    formerly known as BP Amoco Corporation | ) |
| BP Global Special Products (America), Inc. | ) |
| BP Products North Americas, Inc. | ) |
| BP Products North America, Inc., individually and | ) |
|    formerly known as Amoco Oil Company | ) |
| Chelsea Sandwich LLC | ) |
| Chevron USA, Inc., individually and formerly | ) |
|    known as Gulf Oil Corp. (d/b/a Chevron | ) |
|    Products Company, d/b/a Chevron | ) |

| | |
|---|---|
| Chemical Company) | ) |
| Citgo Petroleum Corporation | ) |
| Citgo Refining and Chemical, LP | ) |
| Coastal Eagle Point Oil Company | ) |
| Coastal Mobile Refining Company | ) |
| Coastal Oil New England, Inc. | ) |
| ConocoPhillips Company, individually and as successor-in-interest to Conoco Inc. and Phillips Petroleum Company, and d/b/a Phillips 66 Company | ) ) ) ) |
| Crown Central Petroleum Corporation | ) |
| Cumberland Farms, Incorporated | ) |
| El Paso CGP Company individually and formerly known as The Coastal Corporation | ) ) |
| El Paso Corporation, individually and formerly known as El Paso Energy Corporation | ) ) |
| El Paso Merchant Energy-Petroleum Company, individually and formerly known as Coastal Refining and Marketing, Inc. and formerly known as Coastal States Trading, Inc. | ) ) ) ) ) |
| Equilon Enterprises, LLC, individually and also known as Shell Oil Products US | ) ) |
| ExxonMobil Chemical Company, Inc., individually and formerly known as Mobil Chemical Company Inc. | ) ) ) |
| Exxon Mobil Corporation, individually and as successor-in-interest to Exxon Corporation and as successor-in-interest to Mobil Corporation (d/b/a ExxonMobil Refining and Supply Company) | ) ) ) ) ) |
| ExxonMobil Oil Corporation, individually and formerly known as Mobil Oil Corporation | ) ) |
| Getty Petroleum Marketing, Inc. | ) |
| Getty Properties Corp., individually and formerly known as Getty Petroleum Corp. | ) ) |
| Global Companies, LLC | ) |
| Global Montello Group, LLC | ) |
| Global Petroleum Corporation | ) |
| Gulf Oil LP, individually and formerly known as Catamount Petroleum LP | ) ) |
| Koch Industries, Inc. | ) |
| Lyondell Chemical Company, individually and formerly known as Lyondell Petrochemical Company and formerly known as Arco Chemical Company | ) ) ) ) |

3

| | |
|---|---|
| Marathon Ashland Petroleum, LLC | ) |
| Marathon Oil Company, individually and formerly known as USX Corporation (f/k/a United States Steel Corporation) | ) ) ) |
| Marathon Oil Corporation, individually and formerly known as USX Corporation (f/k/a United States Steel Corporation) | ) ) ) |
| Mobil Corporation | ) |
| Motiva Enterprises, LLC | ) |
| Premcor Inc. | ) |
| The Premcor Refining Group, Inc., individually and formerly known as Clark Refining | ) ) |
| Shell Oil Company | ) |
| Shell Oil Products Company | ) |
| Shell Oil Products Company, LLC | ) |
| Shell Petroleum, Inc. | ) |
| Shell Trading (US) Company, individually and formerly known as Equiva Trading Company, and also known as Stusco | ) ) ) |
| Star Supply Petroleum, Inc. | ) |
| Sunoco, Inc., individually and formerly known as Sun Oil Company, and formerly known as Sun Company, Inc. | ) ) ) |
| Sunoco, Inc. (R&M), individually and formerly known as Sun Refining and Marketing Company and formerly known as Sun Company Inc. (R&M) | ) ) ) ) |
| Tosco Corporation, individually and also known as Tosco Refining Company, and also known as Tosco Marketing Company | ) ) ) |
| Unocal Corporation, individually and formerly known as Union Oil Company of California | ) ) ) |
| Valero Energy Corporation | ) |
| Valero Marketing and Supply Company | ) |
| Valero Refining and Marketing Company, | ) |
| | ) |
| Defendants. | ) |

4

## **NOTICE OF REMOVAL**

TO THE HONORABLE JUDGE OF THIS COURT:

The undersigned defendants ("Defendants"), by their attorneys and pursuant to 28 U.S.C. § 1441 *et seq.*, file their Notice of Removal of the action captioned as *Town of Duxbury, et al. v. Amerada Hess Corp., et al.*, Case No. 03-4623-A, from the Superior Court of Suffolk County, to the United States District Court for the District of Massachusetts. As grounds for removal, Defendants state as follows:

1. On September 30, 2003, thirty entities identifying themselves as public water suppliers ("Plaintiffs") filed this action in the Superior Court of Suffolk County. On November 17, 2003, Plaintiffs filed their First Amended Complaint (the "Am. Cmplt.") in that same court. The First Amended Complaint names additional plaintiffs and drops certain defendants. A copy of the Complaint and the First Amended Complaint are attached hereto as Exhibit 1.

2. 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . , to the district court of the United States for the district and division embracing the place where such action is pending." Moreover, 28 U.S.C. § 1442(a)(1) provides for removal of a state court action against a person acting under the direction of an agency or officer of the United States for any act under color of such office.

3. This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1331 (federal question). In addition, the defendants were acting under federal direction at the time of the conduct of which Plaintiffs complain, 28 U.S.C. § 1441(a).

4.  This Notice of Removal is filed in the District Court of the United States for the district in which this suit was filed.

5.  Upon information and belief, no Defendant was served more than 30 days prior to the filing of this Notice of Removal. Accordingly, this Notice of Removal is filed within the time frame provided by 28 U.S.C. § 1446(b).

6.  All non-nominal Defendants have joined in this notice or otherwise consented to this removal. Written consents are included in Appendix A. For obvious reasons, the law is clear that fictitious or non-existent parties are not required to join in or consent to the removal.[1]

7.  Pursuant to the requirements of 28 U.S.C. § 1446(d), Defendants have filed a copy of this Notice of Removal with the Clerk of the Superior Court of Suffolk County, where the action was originally filed. Defendants have also served Plaintiffs with this Notice of Removal.

## SUMMARY

8.  This removal is necessitated by a broadside attack on the comprehensive federal system that regulates the content of gasoline, which expressly authorizes and effectively requires the conduct that the Plaintiffs seek to prohibit based on far-fetched theories of state common law. More than forty lawsuits have been filed since September 30, 2003, in various state courts around the country, uniformly asserting that the inclusion of methyl tertiary butyl ether ("MTBE") in gasoline constitutes an inherent design defect.

---

[1] *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (holding that "nominal" defendants need not consent to removal); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1009 n. 2 (3d Cir. 1987) (notice that "nominal" parties are disregarded in determining whether all defendants consent to removal); *GMFS, L.L.C. v. Bounds*, 275 F. Supp. 2d 1350, 1354 (S.D. Ala. 2003) ("fictitious defendants need not joint in or consent to removal"); *Hicks v. Emery Worldwide, Inc.*, 254 F. Supp. 2d 968; 975 (S.D. Ohio 2003) (holding that nonexistent defendant need not consent to removal).

A list of the cases of which Defendants are aware is attached hereto as Exhibit 2. These cases – seeking damages, fines, and injunctions under a patchwork of various states' laws as a result of the gasoline industry's use of MTBE to comply with federal Clean Air Act regulations – threaten the integrated national system for the supply and distribution of gasoline and highlight the need for federal judicial resolution of these claims. At their core, they challenge who may determine the content of gasoline nationwide: the EPA, charged by Congress with that authority, or disparate civil juries in state courts in multiple jurisdictions in countless separate actions.

9. Piecemeal state court litigation will result in scores of state judges across the country independently interpreting the Clean Air Act ("CAA") and EPA regulations regarding fuel content. Inconsistent decisions from state to state would interfere with and disrupt the federal regulatory regime, putting the oil industry in the impossible situation of trying to comply with federal air pollution regulations at the risk of incurring substantial state penalties and civil liability. The orderly supply of gasoline would be threatened as would the viability of the national gasoline distribution system. In sum, the state MTBE actions implicate substantial federal questions in an area – the content of motor fuel – that has been pervasively occupied by federal statutes and regulations. Accordingly, these claims must be resolved in federal, rather than state, court.

10. In 1999, several MTBE cases were removed and consolidated in the United States District Court for the Southern District of New York in MDL 1358 – *In re MTBE Products Liability Litigation*. After the court dismissed much of those claims and refused to certify four statewide purported class actions, the individual actions were settled and dismissed. MDL 1358, although currently inactive, is still pending.

Simultaneous with this Notice of Removal, Defendants will give notice of relatedness to the MDL Panel and request transfer of this action, and all other MTBE actions being removed to federal court, to MDL 1358.

11. This Notice of Removal does not challenge Plaintiffs' ability to pursue state law claims against individuals or entities that leak or spill gasoline into the environment. Nor do Defendants assert that federal law preempts traditional state law claims such as trespass or nuisance grounded in the actual releases of gasoline which proximately cause environmental damage. State statutory and common law both provide well-established and tested civil remedies to parties who have suffered such injuries, to be asserted against the person or persons actually responsible for the release itself.

12. However, federal law has preempted the narrow field of fuel content. Because federal law so pervades the area, state law claims premised on the gasoline itself being defective are preempted. Plaintiffs' claims require interpretation of federal regulations concerning fuel content. Thus, the Complaint presents on its face a substantial federal question in an area completely preempted by federal law.[2]

## BACKGROUND

13. In 1977, Congress amended the CAA, by adding what has been codified as 42 U.S.C. § 7545, to federalize fuel content requirements. Section 7545 empowers the

---

[2] Several courts have considered the preemption issue in MTBE litigation. *Kubas v. Unocal Corp.*, 2001 WL 1940938 (Cal. Supr. Ct., LA. Cty., Aug. 23, 2001); *Hixson v. Unocal Corp.*, No DC195295 (Cal. Supr. Ct., LA. Cty., Aug. 23, 2001); *Holten v. Chevron USA*, 2001 U.S. Dist. LEXIS 17599 (D.N.J. 2001); *Coppola v. Amerada Hess Corp.*, No. 2001/3995 (N.Y. Supr. Ct., Dutchess Cty., Jul. 31, 2002); *Molloy v. Amerada Hess Corp.*, No. 2001/3996 (N.Y. Supr. Ct., Dutchess Cty., Aug. 1, 2002). *See also In re MTBE*, 175 F. Supp. 2d 593, 611-16 (S.D.N.Y. 2001) (existence of preemption a question of fact). *Contra Abundiz v. Explorer Pipeline Co.*, 2002 WL 1592604 (N.D. Tex., July 17, 2002); *Oxygenated Fuels Assoc., Inc. v. Davis*, 331 F.3d 665 (9th Cir. 2003); *Oxygenated Fuels Assoc., Inc. v. Pataki*, 158 F. Supp. 2d 248 (N.D.N.Y. 2001). Although this is not an issue of first impression, no court has addressed preemption in the context of an all-out assault on one of the central pillars of interstate commerce, thus raising precisely the factual issue acknowledged by many of these courts – that these tort claims have the potential to interfere with federal gasoline regulation.

EPA to require all fuels and fuel additives to be registered with the EPA, and prohibits the sale of any fuel or fuel additive anywhere in the country that has not been registered with the EPA Administrator.

14. In 1977, Congress gave EPA the express and exclusive authority to decide what fuels and fuel additives are sold nationwide. In § 7545(f)(1) and (3) of the CAA, Congress made it unlawful to sell any motor vehicle fuel or fuel additive "which is not substantially similar to any fuel or fuel additive" already on the market. Under § 7545 (f)(4), Congress gave the EPA the exclusive authority to waive the prohibitions established under paragraph (1) or (3) under certain conditions. Once a fuel is waived into commerce under § 7545 (f)(4), it may be sold nationwide.

15. EPA has issued two § 7545 (f) waivers for MTBE. The first such waiver was issued in 1979, allowing MTBE to be "introduce[d] into commerce" at concentrations of 0 to 7 percent by volume in order to enhance octane in gasoline following the ban on lead. 44 Fed. Reg. 12,242, 12,243 (Mar. 6, 1979). EPA thereafter determined that a fuel would be "substantially similar" if it contained oxygen at up to 2.0 percent by weight. See 46 Fed. Reg. 38,582 (July 28, 1981). EPA issued the second waiver in 1988, in this case "granting a waiver for a fuel consisting of a blend of up to 15 percent [MTBE] in unleaded gasoline . . . ." 53 Fed. Reg. 33,846 (Sept. 1, 1988).

16. In 1990, Congress again comprehensively amended the CAA. As part of those amendments, Congress created two broad-ranging programs requiring petroleum refiners to blend oxygenates into gasoline sold throughout much of the country: the Oxy-

Fuel Program ("OFP") and the Reformulated Gasoline ("RFG") Program. Both programs were designed to reduce emissions of toxic air pollutants.[3]

17. In mandating the RFG Program, Congress required the EPA to promulgate regulations regarding fuel content which:

> [s]hall require the greatest reduction in emissions of ozone forming volatile organic compounds . . . and emissions of toxic air pollutants . . . achievable through the reformulation of conventional gasoline, taking into consideration the cost of achieving such emissions reductions, any nonair quality and other air-quality related health and environmental impacts and energy requirements.

42 U.S.C. § 7545(k)(1).

18. Congress was well aware, when it enacted these oxygenate mandates, that only a small number of oxygenated compounds could be blended with gasoline to achieve the minimum oxygen levels set.

19. Congress also knew, when it enacted these oxygenate mandates, that the industry would have to blend MTBE into at least some of the gasoline sold in OFP and RFG areas in order to comply with these program requirements. Indeed, both Congress and EPA fully understood that MTBE would be used in the vast majority of oxygenated gasoline sold in the United States. See 136 Cong. Rec. S 6383, 6384 (1990) (remarks of Sen. Daschle) ("EPA predicts that the amendment will be met almost exclusively by MTBE"). One Congressional estimate stated that "the MTBE market is expected to expand by more than 20 percent every year for the next five years" as a result of the CAA amendments. 136 Cong. Rec. S. 2280, 2289 (1990) (remarks of Sen. Daschle). *See also* 136 Cong. Rec. S 17773-74 (remarks of Sen. Daschle) ("the [RFG] program ...will

---

[3] "Oxygenates" are chemical compounds – ethers or alcohols – that, when blended with gasoline, materially increase its oxygen content, enabling it to burn "cleaner" and emit fewer volatile organic compounds into the air.