UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| Brimfield Housing Authority, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2003-12399RGS |
| | ) | |
| Amerada Hess Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RULING ON TRANSFER AND CONSOLIDATION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

The undersigned defendants ("Defendants") submit this Memorandum in Support of their Motion to Stay Proceedings Pending Ruling on Transfer and Consolidation by the Judicial Panel on Multidistrict Litigation.

## BACKGROUND

As described in detail in the November 26, 2003 Notice of Removal, this case is one of a wave of what is now more than forty lawsuits filed since September 30, 2003, in various state courts around the country, uniformly asserting that the inclusion of methyl tertiary butyl ether ("MTBE") in gasoline to comply with the Clean Air Act ("CAA") and United States Environmental Protection Agency ("EPA") fuel content regulations constitutes an inherent design defect.

Certain defendants have removed, or are in the process of removing, substantially all of the cases filed to date (listed in Exhibit 1) to the respective federal courts in those districts, have

1

filed notices of relatedness to MDL 1358[1] with the JPML, and will continue to remove and file notices of relatedness with respect to any additional tag-along cases. Defendants will also seek to stay each removed action pending transfer to a single judge by the JPML. The scope of the allegations and the number of parties involved in the recent onslaught of cases dwarf the cases originally consolidated in MDL 1358.

Redundant proceedings in the numerous districts to which these cases are removed, before transfer by the JPML, would needlessly waste judicial resources, and may result in conflicting rulings on the same issues among the various MTBE cases. For instance, Defendants anticipate that MTBE plaintiffs across the country, almost all of whose cases are managed by the same plaintiffs' counsel, will move to remand each removed case. Having numerous federal courts consider the nearly identical jurisdictional issues over and over, potentially coming up with different (and even conflicting) rulings, is antithetical to the underlying purpose of multi-district litigation – to promote judicial economy and avoid prejudice to the parties. Accordingly, Defendants seek a stay pending the JPML's decision.

## ARGUMENT

It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Amer. Co.*, 299 U.S. 248, 254 (1936); *accord United States v. 6600 N. Mesa, El Paso, Tex. (In re Ramu Corp.)*, 903 F.2d 312, 318 (5th Cir. 1990); 7B C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1792, at 293 (2d ed. 1986) ("When similar actions,

---

[1] MDL 1358 – *In re MTBE Product Liability Litigation* – was created in 2000, as a result of previous lawsuits attacking MTBE. Defendants there (including many of the same defendants involved in the present matter) removed several cases to federal court and successfully petitioned the JPML to consolidate them in the United States District Court for the Southern District of New York. After the judge in MDL 1358 rejected the plaintiffs' efforts to certify a class action, those cases were resolved individually and dismissed. MDL 1358, although currently inactive, is still pending.

either class or individual, are proceeding before several courts, one or more of the tribunals may stay the proceeding before it pending the outcome of the other action. . . ."); Federal Judicial Center, *Manual for Complex Litigation* § 31.14 (3d ed. 1995) ("In appropriate cases, a judge may order an action stayed pending resolution of a related case in a federal court. . . .").

## A STAY IS APPROPRIATE PENDING A RULING BY THE JPML.

"Courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp.2d 804, 809 (N.D. Cal. 1998). A stay is particularly appropriate in this situation because the very "purpose of such [MDL] transfers is to further judicial economy and to eliminate the potential for conflicting pretrial rulings." *Id.* at 809; *see also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("[c]onsistency as well as economy is thus served" by resolution of common issues by one transferee court); *In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51-52 (2d Cir. 1978); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1360, 1362 (C.D. Cal. 1997); *Arthur Magna, Inc. v. Del-Val Fin. Corp.*, No. 90-4378, 1991 U.S. Dist. LEXIS 1431 (D.N.J. Feb. 1, 1991) (granting stay because it fosters the purpose of the MDL statute to coordinate related litigation).

Indeed, "a majority of Courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers*, 980 F. Supp. at 1362. A number of courts have granted such stays. *See, e.g., Smith v. Mail Boxes, Etc. USA, Inc.*, 191 F. Supp.2d 1155 (E.D. Cal. 2002); *Medical Soc'y of N.Y. v. Connecticut Gen. Corp.*, 187 F. Supp.2d 89, 92 (S.D.N.Y. 2001); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp.2d 582 (D. Md. 2001); *Siewert-Sitzmore v. Bridgestone/Firestone, Inc.*, No. 00-1289 (C.D. Ill. Sept. 14, 2000); *Falgoust v. Microsoft Corp.*, No. 00-0779, 2000 U.S. Dist. LEXIS 5417 (E.D. La. Apr.

19, 2000); *Weinke v. Microsoft Corp.*, 84 F. Supp.2d 989 (E.D. Wis. 2000); *Aikins v. Microsoft Corp.*, No. 00-0242, 2000 U.S. Dist. LEXIS 4371 (E.D. La. Mar. 24, 2000); *D's Pet Supplies v. Microsoft Corp.*, Nos. 99-76056, 99-76086, 99-76202, 00-70481, 2000 U.S. Dist. LEXIS 16482 (E.D. Mich. Feb. 7, 2000); *Dumont v. Charles Schwab & Co.*, Nos. 99-2840, 99-2841, 2000 U.S. Dist. LEXIS 619 (E.D. La. Jan. 19, 2000); *Tench v. Jackson Nat'l Life Ins. Co.*, No. 99 C 5182, 1999 U.S. Dist. LEXIS 18023 (N.D. Ill. Nov. 10, 1999); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp.2d 37, 43 (D.D.C. 1999); *American Seafood, Inc. v. Magnolia Processing, Inc.*, Nos. 92-1030, 92-1086, 1992 U.S. Dist. LEXIS 7374 at *5 (E.D. Pa. May 7, 1992); *Portnoy v. Zenith Labs*, No. 86-3512, 1987 U.S. Dist. LEXIS 16134 (D.D.C. Apr. 21, 1987). At least one court has ordered a stay under these circumstances *sua sponte. See Correa-Rodriguez v. Bridgestone/Firestone, Inc.*, No. 00-3805-CIV-GRAHAM (S.D. Fla. Oct. 19, 2000).

Factors relevant to whether a stay should be ordered include: (1) hardship to the moving party if a stay is not granted; (2) the judicial resources saved by avoiding duplicative litigation; and (3) potential prejudice to the non-moving party. *See, e.g., Rivers*, 980 F. Supp. at 1360. These factors weigh heavily in favor of a stay in this case.

### A.    A Stay Will Conserve Judicial Resources And Prevent Inconsistent Adjudications.

Given the common issues of fact and law presented by the actions listed in Exhibit 1 and other potential tag-along cases, these cases clearly are suitable for transfer and coordination. As described above, the core issue in each of these cases is whether use of MTBE in gasoline to comply with the CAA and EPA fuel content regulations constitutes an inherent design defect. As such, all of the complaints allege nearly identical causes of action. Transferring these actions, including this case, to a single court would avoid the unnecessary waste of judicial resources to

4

deal with identical issues in multiple actions, and would prevent inconsistent rulings on common issues from case to case.   The JPML therefore is likely to transfer this action and the others.

Conflicting rulings among the cases also might result.  This case will likely present a number of pretrial motions, a motion by Defendants to dismiss, and motions for summary judgment, raising complex issues of federal preemption and jurisdiction with which the transferee court can more efficiently familiarize itself, and then apply the same rules consistently in all of the actions, avoiding conflicting decisions.  *See, e.g., In re Bridgestone/Firestone, Inc., ATX, ATX II & Wireless Tires Prods. Litig.*, 2000 U.S. Dist. LEXIS 15926, at *6-7 (J.P.M.L. Oct. 24, 2000) ("jurisdictional and remand motions can be presented to and decided by the transferee judge").

Defendants fully expect that plaintiffs around the country will file motions to remand.  If separate district judges in more than forty cases independently decide the issues raised by the anticipated motions for remand, including questions of federal jurisdiction, preemption and construction of the CAA and the EPA's fuel content regulations, the result will be a landslide of legal and factual outcomes potentially at odds with one another concerning Congressional intent and EPA's interpretation of that intent.  If courts decide these before the JPML can act, then some cases may be permanently returned to state court (with potentially no appellate review of the remand), while others remain in federal court.  Even if the vast majority of judges determines that a uniform federal resolution is appropriate, their rulings could be undermined by a handful of other judges' decisions to remand.  To avoid the prejudice inherent in these conflicting rulings, it is clearly preferable that a single transferee judge decide, across the board, whether a federal forum is appropriate for all of these cases.

Thus, courts often stay proceedings in anticipation of jurisdictional issues being addressed by the transferee court selected by the JPML. *See In re Bridgestone/Firestone*, 2000 U.S. Dist. LEXIS 15926 at *6-7; *see also In re Ivy*, 901 F.2d at 9 (holding that JPML has jurisdiction to transfer a case in which a jurisdictional issue is unresolved and that jurisdictional issue be resolved by the transferee court); *Weinke*, 84 F. Supp. 2d at 989-90 (staying action pending MDL ruling despite remand motion); *Siewert-Sitzmore*, slip. op. at 5-6 (granting stay and noting that "issues of federal jurisdiction . . . have been raised in some and are likely to be raised in other pending cases . . . this case appears to be appropriate for JPML review and consolidation or coordination"); *Falgoust*, 2000 U.S. Dist. LEXIS 5417 at *6-7 (staying action in deference to a pending MDL motion, notwithstanding the filing of a motion to remand to state court); *Akins*, 2000 U.S. Dist. LEXIS 4371 at *3-4 (same); *D's Pet Supplies*, 2000 U.S. Dist. LEXIS 16482 at *2 (same); *Tench*, 1999 U.S. Dist. LEXIS 18023 at *3 (same); *Johnson v. AMR Corp.*, 1996 WL 164415 *4 (N.D. Ill. 1996) (staying any ruling on a pending motion to remand until JPML ruled on transfer, stating that the "rewards of this approach are consistency and economy" and that "[i]f the cases are transferred, it is far better for the [transferee court] to resolve the jurisdictional question."); *Manual for Complex Litigation, supra*, § 31.131 & n.795.

The JPML has also recognized the benefits of efficiency, economy, and consistency that result in having the court where the consolidated actions are pending rule on any jurisdictional issues. In *In re Federal Election Campaign Act Litig.*, 511 F. Supp. 821, 824 (JPML 1979), the Panel, in transferring a number of actions where motions to dismiss for lack of subject matter jurisdiction were pending, noted that having a single judge considering the motions "will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue." *See also In re Consolidated Welfare Fund "ERISA" Litig.*, 1992

6

WL 212348 *1 (S.D.N.Y. 1992 (JPML transferred case for coordinated pretrial proceedings despite a motion to remand pending); *In re Franklin Nat'l Sec. Litig.*, 393 F. Supp. 1093, 1095 (JPML 1975) (holding that pending remand motion did not warrant delay of transfer and consolidation because transferee judge could still decide remand issue); *In re Professional Hockey Litig.*, 369 F. Supp. 1117, 1118 (JPML 1974) (actions transferred despite pending remand motion because transferee judge has power to decide remand issue). Indeed, the JPML's most recent pronouncement similarly endorsed "streamlining treatment of the remand issue" in the transferee court. *In re Wireless Telephone Federal Cost Recovery Fees Litig.*, slip. op. at 2, No. 1559 (JPML Nov. 13, 2003).

If the Court proceeds with substantial pretrial activities, and then this case is subsequently transferred, "this Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers*, 980 F. Supp. at 1360. Moreover, "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Id.* at 1360-61. Judicial economy thus counsels strongly against a substantial investment of this Court's time in pretrial proceedings.

### B.    A Stay Will Prevent Prejudice To All Parties.

Duplicative litigation also wastes the parties' resources. Absent a stay, the parties will have to litigate a number of complex issues before this Court, and perhaps the courts where other MTBE actions are pending, even though the cases likely will be transferred and the same issues relitigated in the transferee court. This wasted effort can be avoided by a temporary stay. *See, e.g., Am. Seafood*, 1992 U.S. Dist. LEXIS 7374 at *6 ("duplicative motion practice and

discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of the stay").

The same is true of discovery. If discovery proceeds here, and at the same time in the courts where the other actions are pending, a great deal of work will be duplicated by all parties. *Rivers*, 980 F. Supp. at 1362. Given the similar or identical allegations in many of the complaints, against a largely common group of defendants, discovery in this action would overlap substantially with discovery in the other cases. Similarly, as many of the plaintiffs in these actions share common counsel, they too will bear the burdens of overlapping discovery and the benefits of coordinated discovery. By contrast, a stay followed by multidistrict coordination would enable the parties to respond to a consolidated set of comprehensive discovery requests.[2] Thus, the Court should stay these proceedings pending a decision by the JPML whether to coordinate the actions in one court for discovery and other pretrial proceedings.

Moreover, any rulings made on substantive or discovery issues in the courts in which the actions now are pending, including this Court, may be vacated after a transfer. "[T]ransferee judges have been known to vacate or modify previous rulings of the transferor judge." *Rivers*, 980 F. Supp. at 1361 (citing cases). "[T]he time and energy that this Court would devote to any rulings it might make . . . could be for naught if this action is transferred to another court and that court modifies or vacates any of this Court's orders." *Id.*

If the case proceeds here before a transfer, either or both sides may be prejudiced by inconsistent rulings on important issues common to all of the MTBE cases. Given the integrated nature of the national gasoline distribution system, inconsistent rulings would be particularly

---

[2]Although a stay followed by multidistrict coordination would allow the use of a consolidated set of comprehensive discovery requests, individual defendants would of course only be subject to discovery that is related to the cases and states in which they have been sued and would retain the right to object to any requests on grounds of relevance, overbreadth and otherwise.

prejudicial in this case. Indeed, in enacting the CAA, Congress recognized how imperative uniformly interpreted fuel content regulations are to national gasoline distribution. For this reason, Congress vested exclusive jurisdiction with respect to judicial review of fuel content regulations in the D.C. Circuit Court of Appeals, 42 U.S.C. § 7607(b), to avoid the possibility of inconsistent results even among the federal circuits.

### C.     A Stay Will Not Prejudice Plaintiff.

"[P]laintiff will not be substantially prejudiced by staying this action pending the decision of the JPML. The stay that the Court orders will only be in effect until the JPML issues its decision. Therefore, there will be no extended delay in the commencement of discovery." *Am. Seafood*, 1992 U.S. Dist. LEXIS 7374, at *5, *see also Aikins*, No. Civ. A. 00-0242, 2000 U.S. Dist. LEXIS 4371, at *5 (E.D. La, Mar. 23, 2000) ("[p]laintiffs have failed to show any significant prejudice they would suffer, beyond the slight delay pending the JPML decision").

A stay will impose no hardship upon Plaintiff, much less a "substantial" one. Nothing in the Complaint would suggest significant prejudice from a short stay, and there is no indication any evidence or witnesses would be lost during a brief stay. Resolution of the anticipated remand motion and other pre-trial matters by the MDL court in New York, as opposed to Massachusetts, will impose no increased burden. Indeed, transfer and coordination in a single court is likely to result, in the long run, in a faster resolution, and more efficient discovery.[3]

---

[3] Even if plaintiff could be prejudiced by a brief stay, that minimal prejudice is offset by the obvious benefits of coordinated proceedings. *See, e.g., Rivers*, 980 F. Supp. at 1362 n.5 ("even if a temporary stay could be characterized as a delay that would be prejudicial . . . there are still considerations of judicial economy that outweigh any prejudice."); *Am. Seafood*, 1992 U.S. Dist. LEXIS 7374 at *5 ("any prejudice to the plaintiffs is clearly outweighed by the considerations of judicial economy and possible prejudice to the defendants"); *Arthur-Magna*, 1991 U.S. Dist. LEXIS 1431 at *4 ("even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay").

For the foregoing reasons, Defendants respectfully move for an order temporarily staying proceedings in this action until the JPML determines whether it should be transferred to another court and coordinated with other substantially identical actions.

Respectfully submitted,

CITGO Petroleum Corporation

By: _____

J. Owen Todd (BBO # 499480)
Lisa Arrowood (BBO # 022330)
Kathleen Genova (BBO # 563359)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

Nathan P. Eimer
Pamela R. Hanebutt
Lisa S. Meyer
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
(312) 692-1718 (fax)
**Attorneys for Defendant CITGO Petroleum Corporation**

Dated: December 11, 2003

Joining Defendants:

Tracie L. Longman
Andrew G. Wailgum
Seth M. Wilson
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110
(617) 457-4000
(617) 482-3868 (fax)

J. Andrew Langan
Mark S. Lillie
R. Chris Heck
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000
(312) 861-2200 (fax)
  **Attorneys for Atlantic Richfield Company; BP America, Inc.; BP Amoco Chemical
  Company; BP Company North America Inc.; BP Corporation North America Inc.; BP
  Global Special Products (America) Inc.; BP Products North America Inc. (formerly
  known as Amoco Oil Company and misnamed as BP Products North Americas, Inc.)**

Mark E. Tully
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
(617) 523-1231 (fax)
  **Attorney for Chelsea Sandwich LLC; Cumberland Farms Incorporated; Global
  Companies, LLC; Global Montello Group, LLC; Global Petroleum Corporation; and
  Gulf Oil Limited Partnership**

William L. Parker
Fitzhugh, Parker & Alvaro LLP
155 Federal Street
Suite 1700
Boston, MA 02110-1727
(617) 695-2330
(617) 695-2335 (fax)

Richard E. Wallace
Peter C. Condron
Wallace King Marraro & Branson, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, DC 20007
(202) 204-1000
(202) 204-1001 (fax)
  **Attorneys for Chevron U.S.A., Inc.; Equilon Enterprises, LLC; Motiva Enterprises,
  LLC; Shell Oil Company; Shell Oil Products Company; Shell Oil Products Company,
  LLC; Shell Petroleum, Inc.; and Shell Trading (US) Company**

Daniel Rosenfeld
Michael DeMarco
Kirkpatrick & Lockhart, LLP
75 State Street
Boston, MA 02109
(617) 261-3100
(617) 261-3175 (fax)

Rod G. Smith
ConocoPhillips
600 North Dairy Ashford
Houston, TX 77079
(281) 293-1740
(281) 293-3826 (fax)
     **Attorneys for Defendant ConocoPhillips Company and Tosco Corporation**

Deborah E. Barnard
Robin L. Main
Tara Myslinski
Holland & Knight LLP
10 St. James Ave.
Boston, MA 02116
(617) 523-2700
(617) 523-6850 (fax)
     **Attorneys for Exxon Mobil Chemical Company, Inc.; Exxon Mobil Corporation; Exxon Mobil Oil Corporation; Exxon Mobil Refining and Supply Company; and Mobil Corporation**

William Kayatta
Pierce Atwood
One Monument Square
Portland, ME 04101
(207) 791-1238
(207) 791-1350

Alan J. Hoffman
Blank Rome LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6998
(215) 569-5505
(215) 832-5505 (fax)
     **Attorneys for Lyondell Chemical Company**

## CERTIFICATE OF SERVICE

I, Lisa G. Arrowood, one of the attorneys for CITGO Petroleum Corporation, hereby certify that I caused a copy of the foregoing to be served upon all counsel on the attached Service List, by U.S. Mail, first class postage prepaid, on December 11, 2003.

Lisa G. Arrowood